UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BRENDA THOMPSON, | : | Hon. Dennis M. Cavanaugh |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 06-1858 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

  This matter comes before the Court upon Plaintiff Brenda Thompson's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying Plaintiff's request for Social Security Income ("SSI"). This Court has jurisdiction to review this case under 42 U.S.C. § 405 (g).  For the reasons stated below, the final decision is reversed and remanded.

  I. **Background**
    **A.  Procedural History**

Plaintiff filed an application for SSI on April 3, 2003.  R. 48-61.  The application was denied initially and upon reconsideration.  Record ("R.") 22-32.  Plaintiff requested a hearing

-1-

before an Administrative Law Judge ("ALJ") to review her application.  R. 35.  A hearing was held on March 15, 2005 before ALJ Michal Lissek. R. 186-217.  On April 8, 2005, Judge Lissek issued a decision denying Plaintiff's claim.  R. 11-20.  On April 27, 2005, Plaintiff requested that the Appeals Council review the ALJ's decision.  R. 161-63, 184-85.  The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. R. 5.  Plaintiff thereafter filed this action challenging the final decision.

### B. Factual History

Plaintiff, Brenda Thompson, is a 46 year-old female who was born on November 23, 1960.  R. 48.   She is a high school graduate.  R. 194.  For about a year, she worked part-time in a Foreman Mills department store.  R. 64, 196-98.  Her job duties consisted of packing and sales. R. 197-200. She was required to stand for three to four hours a day, do a significant amount of walking, and lift clothing.  Id.  For three months in 1998, Plaintiff worked at Kiehl's cosmetic plant in West Orange and packed cosmetics.  R. 64, 196.  Plaintiff stopped working later  in 1998.  R. 197.

On June 6, 2003, Plaintiff saw Dr. Alan Plauka for a consultative examination.  R. 113-17.  Plaintiff told  Dr. Plauka she had a history of HIV since 1990, Hepatitis B since 1996, numbness in her feet for two years, and upper leg pain for six months. R. 113.   Plaintiff  has a history of asthma, but has not suffered from asthma attacks recently nor made visits to the emergency room for asthma treatment.  Id.  Plaintiff's medical history includes diagnoses of depression, trouble sleeping, seizures, and cervical cancer.  Id.  Plaintiff reported to Dr. Plauka that she could complete daily activities, such as bathing and dressing herself, cooking, doing laundry, watching television, and listening to the radio.  R. 114.  Dr.  Plauka noted that Plaintiff's

gait and station, heart and lungs, and deep tendon reflexes were normal. R. 115. Dr. Plauka further observed that Plaintiff's lumbar and cervical spines had a full range of motion and muscle strength. Id. Dr. Paluka imposed mild limitations on Plaintiff's activities. R. 116. He advised Plaintiff to avoid prolonged walking, heights, and machinery; to seek psychiatric help for her depression; and to avoid smoke, dust, and other respiratory irritants. Id.

On June 24, 2003, Dr. Anita Vaughn, Plaintiff's treating physician, completed a questionnaire at the request of the Division of Disability Determinations. R. 123. Dr. Vaughn reported that on September 25, 2002, she began treatment of Ms. Thompson for headaches, depression, a rash, and asthma. R. 123-26. Dr. Vaughn did not report that Plaintiff suffered from fatigue, but she did recommend limitations on Plaintiff's activities. R. 125-26. Dr. Vaughn recommended that Plaintiff be limited to four hours of standing and walking. R. 126. Dr. Vaughn also instructed Plaintiff to avoid dust, trees, and grass due to asthma. Id..

On August 8, 2003, Dr. Donald Moorehead, a consultative psychiatrist, evaluated Plaintiff. R. 128-32. Plaintiff claimed inability to work because of neuropathy in her feet and muscle spasms in her legs. R. 128. She also reported a history of drug abuse, but could not recall the date she last used drugs. Id. Plaintiff also revealed that she was arrested, but was reluctant to disclose details of her legal history. R. 129. Dr. Moorehead noted Plaintiff's anxiety related symptoms: occasional worry, apprehension, and headaches. R. 129. Dr. Moorehead reported that the Plaintiff's thought process was coherent and goal-directed. R. 130. While Dr. Moorehead also noted that Plaintiff's attention and concentration were mildly impaired, he found Plaintiff able to independently perform daily activities, understand simple directions and instructions, consistently perform simple tasks, and learn new tasks. R. 131. Dr. Moorehead

diagnosed Plaintiff with alcohol, cocaine, and cannabis dependence, and personality disorder, not otherwise specified ("NOS"), with anti-social features. Id. He concluded Plaintiff's alleged functional limitations were inconsistent with his findings and recommended vocational training rehabilitation. Id.

On August 22, 2003, Dr. P.A. Spearman, a state agency psychological consultant, determined that Plaintiff's personality and substance abuse disorders did not equal or exceed any Listed impairments. R. 152-53; 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing Sections 12.08 and 12.09. Dr. Spearman concluded that Plaintiff's functional limitations were not fully supported by evidence in the record. R. 143. Dr. Thomas Harding, a second state agency psychological consultant, reviewed and reaffirmed Dr. Spearman's findings. R. 143, 145.

In January and February of 2005, Plaintiff went to the Peter Ho Memorial Clinic in Newark for scheduled doctors appointments. R. 164-85. These visits were for routine follow up and medication refills. Id.

Dr. Martin Fechner, an independent medical expert, offered testimony at Plaintiff's hearing. R. 207-214. Dr. Fechner testified that an analysis of a HIV patient's health requires consideration of the following factors: the patient's general health, weight loss, and the presence of opportunistic infections. R. 213. He stated Plaintiff gained weight, did not have any opportunistic infections, and was receiving treatment for HIV. R. 209. He noted Plaintiff's asthma and seizures were under control. R. 209-210. Dr. Fechner concluded Plaintiff did not have medical impairments which either met or were medically equal to the criteria of any Listed impairment. R. 210; See 20 C.F.R. 404, Subpart P, Appendix 1. He testified that Plaintiff could do light work, including light lifting, and could stand for up to six hours a day. R. 210. He also

recommended that Plaintiff avoid heights and dangerous machinery. R. 211.

 The ALJ made the following findings after concluding the hearing:

1.  The claimant has not engaged in substantial gainful activity since her alleged onset date of April 3, 2003.
2.  The claimant's asymptomatic HIV infection; controlled asthma; depression; anxiety; numbness in her feet; and a history of seizures are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
3.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
4.  For the reasons discussed in this decision, the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
5.  As discussed more fully in this decision, the claimant retains the residual functional capacity to perform a full range of light work.
6.  The claimant has no past relevant work (20 CFR § 416.965).
7.  The claimant is a 'younger individual' (20 CFR § 416.963).
8.  The claimant has 'more than a high school (or high school equivalent) education' (20 CFR § 416.964).
9.  The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR § 416.967).
10.  Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.20, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."
11.  The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rules(s) as a framework for decision-making, the claimant is not disabled.
12.  The claimant was not under a "disability," as defined by the Social Security Act, at any time through the date of this decision. (20 CFR § 416.920(g)).

R. 19-20.


## II. Discussion

### A. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1893(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence: means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000). Some types of evidence are not "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d. Cir. 1983)).

This Court's review of legal issues is plenary. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Shaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)). "The reviewing court, however, does have a duty to review the evidence in its totality." Stonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). The District Court must determine whether the record, as a whole, contains substantial evidence to support the findings of the Commissioner. Shaudeck, 181 F.3d at 431 (3d Cir. 1999). A court may not displace the choice of an administrative body "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." N.L.R.B. v. Greensburg Coca-Cola Bottling Co., 40 F.3d

669, 672-78 (3d Cir. 1994) (quoting Universal Camera Corp v. N.L.R.B., 340 U.S. 474, 488 (1951)).  Thus, "where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Furthermore, the District Court neither has the ability to weigh the evidence "[n]or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007) (3d Cir. 1984)).

Nonetheless, an ALJ must make specific findings of fact to support his ultimate conclusion.  Stewart v.Sec'y of HEW, 714 F.2d 287, 290 (3d Cir. 1983). An ALJ must consider all of the medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence.  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)).  Without access to the ALJ's reasoning, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored.  Cotter, 642 F.2d at 705; Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).

    B.  The Five Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Under the Social Security Act ("Act"), a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that she is unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner established a five-step sequential evaluation analysis to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The first step requires the claimant to establish that she did not engage in substantial gainful activity since the onset of the alleged disability. 20 C.F.R. § 416.920(a). If the claimant did not engage in substantial gainful activity, in the second step, the claimant must prove she suffers a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(c). Since the claimant bears the burden of establishing the first two requirements, a failure to meet these two requirements automatically results in a denial of benefits. Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies her initial burdens, she must provide evidence that her impairment equals or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). Upon providing such evidence, the claimant is presumed disabled and automatically entitled to disability benefits. Id. If the claimant cannot provide such evidence, the

disability analysis continues.  The fourth step of the analysis focuses on whether the claimant's residual functional capacity ("RFC") permits her to resume her previous employment.  20 C.F.R. § 416.920(e).  If the claimant is found capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits.  20 C.F.R. § 416.920(a)(4)(iv).   If the claimant cannot resume her previous employment or does not have any past relevant work, the analysis proceeds to step five.  20 C.F.R. § 416.920(f)-(g).  At step five, the burden shifts to the Commissioner to demonstrate based on the claimant's RFC, as well as her age, education and past work experience, that the claimant can perform other work that exists in the national economy.  20 C.F.R. §§ 416.920(g), 416.960, 416.963, 416.964 and 416.965.  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

### III. Analysis

In this case, Plaintiff argues that the Commissioner's RFC assessment is not based on substantial evidence.  Pl.'s Br. at 10.  Plaintiff further contends  that the ALJ erred in his mechanical application of the standards and in not obtaining the testimony of a vocation expert. Pl.'s Br. at 7.

#### A. Analysis of the Evidence Supporting the ALJ's RFC  Determination

The RFC is "an administrative assessment to the extent which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities."  Social Security Ruling ("SSR") 96-8p.  RFC is what an individual can do despite his or her limitations.  Id.  The ALJ must consider all of the evidence and must give "some indication of the evidence which he

rejects and his reason(s) for discounting such evidence." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).  The Court "do[es] not, however, require an ALJ to use 'magic words' in his analysis." Sassone v. Comm'r of Soc. Sec., 165 F.App'x 954, 959 (3d Cir. 2006) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (holding "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.")).  Furthermore, the Court does not "expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records. . . ." Fargnoli, 247 F.3d at 42.

   Plaintiff argues that the ALJ's RFC analysis is not supported by substantial evidence. Pl's Br. at 11-12.  Specifically, Plaintiff argues the ALJ failed to consider medical evidence from Dr. Plauka, ignored the report of a non-examining state agency physician who found Plaintiff moderately limited in areas of mental functioning, and did not give proper weight to Plaintiff's complaints of pain.  Id.  Plaintiff further argues the ALJ did not perform the necessary "function-by-function" assessment of Plaintiff's abilities.  Pl's Br. at 11.

   Contrary to the Plaintiff's assertions, the ALJ's conclusion regarding the Plaintiff's RFC is based on substantial evidence.  The ALJ's opinion states that the RFC determination was based on objective medical testimony and the Plaintiff's testimony.  R.18.  This conclusion follows four pages summarizing the medical evidence and medical analysis.  R.15-18.  In the analysis, the ALJ considered all of the medical opinions, including those offered by state agency physicians and non-state agency physicians, and the Plaintiff's subjective complaints of pain. R.18.  In determining the Plaintiff's RFC, the ALJ performed the necessary function-by-function assessment of the claimant's work-related activities.

### 1. The Medical Evidence

It is worth repeating that the RFC is the most a person can do despite an impairment. SSR 96-8p. The ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c); SSR 96-5p. The ALJ must consider all of the evidence and must give "some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Based on the medical evidence in the record, the ALJ properly found that the Plaintiff has the ability to perform a full range of light work. R. 18-19. Judge Lissek's RFC determination was based on state agency physician opinions which reflect objective judgements about the nature and severity of the claimant's impairments and resulting limitations. R. 18.; 20 C.F.R. § 416.927; SSR 96-6p.

The ALJ's determination is consistent with Dr. Fechner's and the state agency physician's RFC assessments of the Plaintiff. R. 18, 210. Dr. Fechner concluded the Plaintiff could do light work, walk or stand for six hours a day, and lift twenty pounds occasionally. R. 210. Similarly, the state agency physician concluded Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand for six hours a day, sit for six hours a day, and could push and pull without limitation. R. 134. Notably, the state agency physician's report notes only one restriction; that the Plaintiff avoid heights and dangerous machinery. R. 137. This restriction was taken into consideration by the ALJ when determining the Plaintiff's RFC. R. 18. These medical reports plainly provided the ALJ with substantial evidence for determining the limitations of Plaintiff's impairments.

Plaintiff further argues the ALJ violated SSR 96-6p by failing to address the opinion of a non-examining state agency physician, Dr. Spearman, who found the Plaintiff moderately limited

in areas of mental functioning. SSR 96-6p; R. 141; Pl's Br. at 12. A close reading of the ALJ's opinion reveals that the ALJ did consider this medical opinion when determining the Plaintiff's RFC. In assessing the Plaintiff's mental status, the ALJ notes the evidence establishes that Plaintiff experiences "moderate deficiencies of concentration, persistence, or pace..." R. 17. The only medical opinion that concludes that Plaintiff is moderately deficient in areas of concentration, persistence, or pace is that of Dr. Spearman. R. 144, 155.; Pl's Br. at 12. Thus, Plaintiff's contention that the ALJ's opinion "totally ignores and fails to address" Dr. Spearman's medical opinion in violation of SSR 96-6p is without merit. Pl's Br. at 12.

### 2. Evaluation of Symptamology

The ALJ found that Plaintiff's subjective complaints were not credible nor consistent with the medical evidence in this case. R. 16-7. The ALJ's decision comports with the weight of the medical evidence. Pursuant to 20 C.F.R. § 416.929(c), when a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists. 20 C.F.R. § 416.929(c). Further, if plaintiff's symptoms suggest a greater restriction than can be demonstrated by objective evidence alone, the ALJ shall give consideration to other factors, including subjective complaints. 20 C.F.R. § 416.929(c)(3). It is, however, well within the discretion of the ALJ to evaluate a claimant's subjective complaint. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) aff'd, 85 F.3d 611 (3d Cir. 1996) (citing LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988)). "Even in situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that claim if there is a rational basis to do so." Alexander, 927 F. Supp. at 795 (quoting Duncan v. Sullivan, 786 F. Supp. 466, 470 (E.D. Pa. 1992).

Here, the ALJ determined that the objective evidence in the record did not substantiate Plaintiff's subjective claim. Since a plaintiff must present more than mere subjective complaints of pain, the ALJ did not err by discounting Plaintiff's subjective complaints. At her hearing, Plaintiff testified she experienced pain in her legs, her left arm, her ankle, her elbow, and her hands. R. 202. She said that standing for more than five to ten minutes caused her to be off balance. R. 205. She also said her HIV medications and her depression medication made her sleepy and drowsy. R. 201, 204. Plaintiff argues she cannot perform light work because of these ailments. Pl's Br. at 12. She further argues she is prevented from doing light work because she cannot fulfill the requirements for light work, namely stooping and bending. Id.

Plaintiff's subjective complaints are inconsistent with the opinions of Dr. Plauka, Dr. Fechner, and the results from the residual functional capacity assessment performed by the state agency physician. Dr. Plauka found that the Plaintiff was only *mildly* limited to *prolonged* walking. R. 116 (emphasis added). Dr. Fechner found that the Plaintiff can walk and stand for six hours a day, sit, and lift and carry twenty pounds occasionally. R. 210. The state agency physician's physical residual functional capacity assessments note that the Plaintiff does not have any postural limitations. R. 135. Most importantly, in the postural limitation section of the physical RFC assessment, the state agency physician had the option of noting that Plaintiff had stooping, kneeling, or crouching limitations, but declined to do so. Id.

Furthermore, before discounting Plaintiff's complaints of pain, the ALJ carefully considered a plethora of relevant factors, including, but not limited to: "the nature, location, onset, duration, frequency, radiation, and intensity of any pain; . . . treatment, other than medication, for relief of pain; . . . and the claimant's daily activities and work record." R. 17.

The ALJ noted that the evidence supports a finding that the Plaintiff is capable of performing daily living tasks independently.  Id.  For example, Plaintiff advised Dr. Moorehead that she took care of her personal needs, and was able to cook, clean and do laundry.  R. 130; Def's Br. at 16.  Plaintiff also shopped, managed her own finances, socialized normally, watched television, and listened to the radio.  R. 114, 130; Def's Br. at 16.   As such, this Court finds that there was a rational basis and substantial evidence to support the ALJ's decision to discount Plaintiff's subjective complaints of pain.

### 3.  The ALJ performed the necessary function-by-function analysis of the Plaintiff's work related activities.

Before determining the claimant's RFC, an ALJ must do an initial function-by-function assessment of the claimant's ability to do work-related activities.  SSR 96-8p.  The ALJ is required to address the claimant's ability to do "work related activities in an ordinary setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) and describe the maximum amount of work-related activity the individual can perform based on the evidence available in the case record."  Id.  This discussion must be made by the ALJ in narrative form, "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p; Pearson v. Barnhart, 380 F.Supp. 2d. 496, 506 (3d Cir. 2005).  This analysis should include an assessment of the individual claimant's physical and mental capacities.  SSR 96-8p.

Plaintiff erroneously argues the ALJ did not perform the required function-by-function assessment.  In this case, the ALJ expressly found that Plaintiff could sustain work activities in an ordinary work setting for six hours in an eight our work day.  R. 18.  The ALJ also discussed

the specific medical findings offered by Dr. Vaughn and the state agency physicians who addressed the Plaintiff's physical and mental limitations. Id. The ALJ then concurs with the opinions of the state agency physicians. Id. As such, the ALJ properly completed a function-by-function analysis as required by SSR 96-8p.

### B.   The ALJ erred  in applying the Guidelines

The ALJ's "reliance on the Guidelines in the presence of nonexertional limitations constitutes reversible error . . . ." Poulos v. Comm'r of Soc. Sec. Admin., 474 F.3d 88, 94 (3d Cir. 2007) (citing Sykes v. Apfel, 228 F.3d at 261). Furthermore, the ALJ cannot "determine that a claimant's non-exertional impairments do not significantly erode his occupational base without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)." Sykes, 228 3.Fd at 261; See also Allen v. Barnhart, 417 F.3d 396, 403 (3d Cir. 2005).

> However, this rule
>
> does not apply to claims where we rely on SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational job base. When we rely on such an SSR to support our findings that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision.

Allen, 417 F.3d at 404 (quoting Acquiescence Ruling 01-1(3), 2001 WL 65745 at *4 (S.S.A.)). It must be "crystal clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus the occupational job base." Allen, 417 F.3d at 407; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 94 (3d Cir. 2007).

Consistent with Plaintiff's contention, the ALJ erred in applying the Grids because the ALJ did not take additional vocational evidence into account, give the claimant official notice, or rely on a relevant SSR to establish that the Plaintiff's nonexertional limitation would not erode the occupational job base.

In the instant case, the ALJ concludes that there are no nonexertional limitations which would erode the Plaintiff's base of light work. R. 18, 20. The ALJ ignores, however, that a finding of environmental restrictions constitutes, as a matter of law, a finding of a nonexertional limitation. Hanusiewicz v. Bowen, 678 F. Supp. 474, 478 (3d Cir. 1988) (citing Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984)); SSR 85-15; SSR 96-9; SSR 83-14. The ALJ expressly found, as a matter of fact, that the Plaintiff had environmental restrictions. R. 18-9. This finding prevented the ALJ's reliance solely upon the guidelines because an ALJ "cannot use the [guideline] rules exclusively as a framework for decisionmaking when an individual has a nonexertional limitation." AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.).F

The Third Circuit has instructed that where nonexertional and exertional limitations are at issue, an ALJ must: take or produce vocational evidence, from a vocational expert, the DOT, or other evidence (such as a learned treatise), provide notice and allow the claimant the opportunity to respond, or rely on a SSR *that includes a statement explaining how the particular nonexertional limitation affects the claimant's job base*. Sykes, 228 3.Fd at 261 (emphasis added); See also Allen v. Barnhart, 417 F.3d 396, 403 (3d Cir. 2005); AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.). In this case, there was no evidence presented by a vocational expert as to the effects of the Plaintiff's nonexertional limitation. Similarly, the record does not reflect that the ALJ provided notice to the Plaintiff. As such, in order to sustain the ALJ's finding that the

-16-

environmental restriction does not significantly erode the Plaintiff's occupational base, it was incumbent upon the ALJ to cite to an applicable SSR.

If there is reliance upon a SSR, the SSR must explain how the nonexertional limitations impact the ability to work and the occupational base. Poulos, 474 F.3d at 94; Allen, 417 F.3d at 404-07. In this case, the ALJ cites to SSR 96-6p and SSR 83-10 to support her conclusion. More specifically, the ALJ states "that these restrictions [environmental restrictions] do not erode the base of light work in (SSR 96-6p)." R.18. Furthermore, the ALJ notes that "the restrictions - performing simple, routine work in an environment free from excessive pulmonary irritants and not involving heights or dangerous machinery- does not significantly erode the occupational base of light work (SSR 96-6p)." R.19. The ALJ also cites to Social Security Rule 83-10 stating it provides "that, as related to the residual functional capacity 'the occupational base considered in each Medical Vocational Rule consists of those unskilled occupations identified at the exertional level in question . . . .'" Id. A detailed review of these two Rulings reveals that they do not provide support for the ALJ's conclusion.

SSR 96-6p is a five-page ruling which addresses administrative findings of fact by state agency psychological consultants and other program physicians. SSR 96-6p. The ruling fails to address or discuss in any manner nonexertional limitations, environmental restrictions, or occupational bases. Id. As such, it provides no support for the ALJ's finding here.

The ALJ's reliance upon SSR 83-10 also fails. SSR 83-10 defines, in a glossary, nonexertional limitations and environmental restrictions, but does not explain how these erode an occupational base. The ALJ relies on a selected portion of SSR 83-10 to justify her reliance on the Grids. R. 19. However, as stated above, reliance on the Grids is precluded where

nonexertional limitations are at issue. An SSR mandating application of the Grids circumvents the requirements set forth by the Third Circuit precedent in Sykes, since it fails to explain how the nonexertional limitation at issue effects the Plaintiff's occupational base.

Notwithstanding the ALJ's references to and reliance on SSR 96-6p and SSR 83-10, this Court cannot find, within these Rulings any support for the ALJ's conclusion that the environmental restrictions do not erode the base of light work. It is necessary for the ALJ to explain how the Plaintiff's nonexertional limitations will or will not erode the Plaintiff's base of light work. In the alternative, the ALJ must take additional vocational evidence or provide notice to the claimant of an intention to take notice the determination that claimant's nonexertional impairments do not erode the vocational base and provide the claimant the opportunity to counter that conclusion as required in Sykes.

**Conclusion**

For the foregoing reasons, the Court concludes that the ALJ erred in applying the Grids in the presence of nonexertional and exertional limitations. This Court reverses and remands to the Agency for further proceedings consistent with this opinion. An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:      July  17 , 2007
Orig.:     Clerk
cc:        Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File